UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL A. BILLINGS,

    Plaintiff,

                              Case No. 1:14-cv-1295

v.

                              HON. ROBERT HOLMES BELL

SETERUS, INC.,

    Defendant.

_____/

## **O P I N I O N**

This is a mortgage foreclosure case. The matter is before the Court on Defendant Seterus, Inc.'s (Seterus) motion for summary judgment. (ECF No. 23.) Plaintiff Paul A. Billings has filed a response (ECF No. 25), to which Defendant filed a reply (ECF No. 26). For the reasons that follow, Defendant's motion will be granted.

**I.**

This matter involves the property located at 1355 Leonard Avenue, Muskegon, Michigan (the "Property"). To finance the purchase of the Property, Plaintiff obtained a loan in the amount of $104,800 from First Magnus Financial Corporation on February 22, 2007. The loan was secured by a mortgage on the Property, and was serviced by Bank of America Home Loan Servicing f/k/a Countrywide Home Loan Servicing. On April 13, 2012, the

mortgage was assigned to Federal National Mortgage Association ("Fannie Mae"). Defendant Seterus is the servicer for Fannie Mae.

Plaintiff first defaulted on the loan in November 2011. As a result, Plaintiff entered into a loan modification agreement on July 30, 2012, which reduced his monthly loan payments. (Loan Modification, ECF No. 5, Ex. 5.) Plaintiff still had trouble making his monthly payments, and Seterus notified him that he was again in default on October 31, 2012. (Billings Dep. 8, ECF No. 23-3; 10/31/2012 Notice of Default, ECF No. 23-4.) By April 2013, Plaintiff had not cured his default, and Defendant sent him another notice. (4/1/2013 Notice of Default, ECF No. 23-7.) In October 2013, Plaintiff filed for a second loan modification application and a loss mitigation application, and requested that Defendant attend mediation to discuss possible loss mitigation options. (Compl. ¶ 11–12; Parker Aff. ¶ 4, ECF No. 23-11.) Prior to the mediation, Defendant informed Plaintiff that his application was incomplete, and that additional documents were required. (Parker Aff. ¶ 5.) The missing documents consisted of Plaintiff's bi-weekly paystubs, as well as information regarding Plaintiff's wife's financial status. Plaintiff did not submit the documents, and did not attend the scheduled mediation. (*Id.*)

Plaintiff took no action between December 2013 and February 2014, and his application remained incomplete. (Parker Aff. ¶ 10.) In February 2014, Plaintiff's attorney at the time sent in some of the requested documents. These documents, however, "failed to complete the Application as Plaintiff again failed to provide proper income documentation

2

of his two most current and consecutive bi-weekly paystubs, and Plaintiff did not address or clarify the nature of Plaintiff's income/financial status." (*Id.* ¶ 11.) Defendant notified Plaintiff of the documents he needed to submit to complete his application. (2/19/2014 Notice, ECF No. 23-13.) Plaintiff did not respond to the notice or provide the requested documents. (Parker Aff. ¶ 14.)

By April 2014, Plaintiff's application was still incomplete, and Defendant "determined Plaintiff was not eligible at that time for any loss mitigation options." (*Id.* ¶ 15.) Accordingly, Defendant initiated foreclosure proceedings on April 4, 2014. (Def.'s Mot. Summ. J. 10, ECF No. 23.) Plaintiff then submitted some of the previously requested documents, but by this time, Plaintiff's earlier submitted IRS Form 4506-T, profit and loss statement, and Uniform Borrower Assistance Form had expired. (4/25/2014 Notice, ECF No. 23-14.) Plaintiff did not respond with these documents until May 14, 2014, two days before the scheduled sheriff's sale. Defendant informed Plaintiff that it could not review the documents in time, and proceeded with the sheriff's sale. (Sheriff's Deed, ECF No. 5, Ex. 7.) Plaintiff did not redeem the property within the statutory redemption period, which expired on November 16, 2014.

On November 6, 2014, Plaintiff brought this action in the Muskegon County Circuit Court. *See Paul A. Billings v. Seterus, Inc.*, Case No. 14–69793. On December 18, 2014, Defendant filed a notice of removal in this Court. (ECF No. 1.) On December 23, 2014, Defendant filed a motion to dismiss this case for failure to state a claim upon which relief

may be granted. (ECF No. 5.) The Court granted the motion in part, dismissing all but one of Plaintiff's claims. (Op., ECF No. 11.)[1] The remaining claim relates to Plaintiff's allegations that Defendant violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(f).

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P.

---

[1] Plaintiff's motion for summary judgment attempts to reargue claims previously dismissed by the Court, including: wrongful foreclosure; negligence; breach of contract; and fraudulent misrepresentation. The Court's Opinion will consider only the remaining claim.

56(c); *Matsushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Plaintiff's remaining claim in this matter is a claim alleging that Defendant violated RESPA. In a previous opinion, the Court found that Plaintiff provided sufficient evidence to survive Defendant's motion to dismiss the RESPA claim. The Court noted that "Plaintiff cannot seek equitable relief under RESPA, but Plaintiff has properly alleged actual damages, including monetary damages in the amount he owes in arrears and costs and attorney fees." (Op. 5-6, ECF No. 11.)[2] Defendant argues that it is entitled to summary judgment on Plaintiff's RESPA claim for two reasons: (1) Plaintiff already received a loan modification and other loss mitigation assistance and thus is not eligible for protection under "Regulation X" of RESPA; and (2) Defendant was exempt from any obligation under Regulation X because Plaintiff failed to submit a complete a complete loss mitigation application.

**A. Prior Loss Mitigation Assistance**

"Regulation X" of RESPA became effective on January 10, 2014. *See Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 297 (6th Cir. 2015). It provides that "[a] servicer is only required to comply with the requirements of this section for a single complete loss

---

[2] Plaintiff's response to Defendant's motion for summary judgment again attempts to argue that he is entitled to equitable relief under RESPA. The Court's Opinion will not consider matters already decided.

mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i) It also defines the term "complete loss mitigation applications."[3]

As mentioned, Plaintiff and Defendant entered into a loan modification agreement in July 2012, prior to RESPA's effective date. (ECF No. 5-6.) Defendant argues that even if Plaintiff had submitted a *second* complete loss mitigation application between December 2013 and April 2014, it had no obligations to consider this application under RESPA because servicers are only required to comply with the requirements for a *single* complete loss mitigation application.

Although Plaintiff's response fails to address this argument, the Court is not persuaded. Defendant could not possibly have "compl[ied] with the requirements of [12 C.F.R. § 1024.41] for a single complete loss mitigation application for [Plaintiff's] mortgage loan account" at a time when the statute did not exist and the term "complete loss mitigation application" was not defined. Accordingly, the Court finds that Defendant "was still required to comply with the requirements of section 1024.41 at least once after the section became effective." *See Bennett v. Bank of Am., N.A.*, No. 15-30-ART, 2015 WL 5063271, at *8 (E.D. Ky. Aug. 26, 2015).

**B. Failure to Submit Complete Loss Mitigation Application**

Because the Court finds that Regulation X applies despite prior loss mitigation assistance received by Plaintiff, the Court must address Defendant's argument that it was

---

[3] "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b).

exempt from any obligations owed under Regulation X because Plaintiff failed to submit a complete loss mitigation application. Plaintiff's complaint alleged that Defendant violated: 12 C.F.R. § 1024.41(c) because it received a complete loan modification package on December 5, 2013, and did not evaluate Plaintiff's request within 30 days, and also because it received all of the requested documents by May 6, 2014, and did not evaluate Plaintiff's request within 30 days; 12 C.F.R. § 1024.41(d) because it implicitly denied Plaintiff a loan modification without providing Plaintiff with the reasons for the denial in writing; and 12 C.F.R. § 1024.41(f)(2) because it noticed Plaintiff's home for a foreclosure sale on April 16, 2014, despite the fact that Plaintiff submitted a complete loss mitigation application package in October 2013, and despite the fact that Plaintiff never failed to perform under a loss mitigation option nor received notice that he was rejected under a loss mitigation application.

The majority of Plaintiff's claims rely on a finding that Plaintiff submitted a complete loss mitigation application. Defendant has provided ample evidence that Plaintiff did not submit a complete loss mitigation application. First, Defendant made the following request for admission: "Please admit that Plaintiff was aware that Seterus could not fully complete an evaluation for a second loan modification until all necessary documents and up-to-date financial information were submitted by Plaintiff to Seterus." (Req. for Admission ¶ 2, ECF No. 23-2.) Plaintiff's failure to respond to this request constitutes an admission. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection

addressed to the matter and signed by the party or its attorney."). Moreover, Defendant's repeated notices sent to Plaintiff indicate that additional information was required to complete the application. RESPA and its requirements became effective on January 10, 2014. Defendant provided Plaintiff with notice of missing documents prior to a scheduled mediation in January 2014 (Parker Aff. ¶ 8), in February 2014 (Notice, ECF No. 23-13), and again in April 2014 (Notice, ECF No. 23-14). The evidence shows that Plaintiff did not provide a complete application until two days prior to the sheriff's sale, and RESPA imposes obligations on mortgage servicers who receive a "complete loss mitigation application" more than 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(c), (g).

Further, Plaintiff's argument that he did not receive the required notice for a denial of a loss mitigation application has no merit. *See Deming-Anderson v. PNC Mortg.*, 119 F. Supp. 3d 635, 640-41 (E.D. Mich. 2015) (rejecting an identical claim because the defendant's letters informing the plaintiff that the "application was received but cannot be reviewed because the complete application was not received within the required timeframe before the foreclosure sale . . . provided sufficient reasons for why Plaintiff was being denied").

Plaintiff's response again largely fails to address the evidence presented by Defendant, or provide any evidence in rebuttal. Instead, Plaintiff rests on the facts asserted in his complaint, and states that "[a]t this early stage of the proceedings, where discovery has not yet begun, Plaintiff's pleadings, which must be accepted as true, are sufficient to survive a motion to dismiss." (Pl.'s Resp. to Def.'s Mot. Summ. J. 16, ECF No. 25.) The problem is

8

that at the time Plaintiff made this statement, the discovery period had not only begun, but had been closed for a month and a half. Moreover, Defendant filed a motion for summary judgment, not a motion to dismiss, and therefore the Court need not accept the allegations in Plaintiff's complaint as true. In *Dent v. Investment Corp. of America*, the Eastern District of Michigan recently addressed a similar situation, and stated:

> Despite ample opportunity to obtain discovery from Defendant which could support their positions, Plaintiffs have failed to produce any answers to interrogatories, documentation, or other evidence which could support their allegations that they submitted to Defendant a complete application for mortgage assistance, nor any evidence that Defendant considered that application complete. Plaintiffs thus have failed to demonstrate that a question of material fact exists with regard to whether they submitted a complete application for mortgage relief.

No. 15-cv-11268, 2015 WL 9694807, at *5 (E.D. Mich. Dec. 23, 2015). The same is true here. Plaintiff has failed to create a question of material fact with regard to whether he submitted a complete application for mortgage relief and, therefore, his claims relying on this fact being proved will be rejected.

Moreover, even if Plaintiff could prove that Defendant failed to comply with RESPA, Plaintiff has failed to show that any damages resulted from Defendant's actions, and his claim is therefore futile. Plaintiff's statement in his complaint that he suffered "emotional damages" is insufficient to sustain a claim under RESPA at this stage. *See Austerberry v. Wells Fargo Home Mortg.*, No. 15-cv-13297, 2015 WL 8031857, at *7 (E.D. Mich. Dec. 7, 2015) (holding that a plaintiff seeking compensation for emotional damage under RESPA must provide more than "threadbare" claims, and must show "how Defendant allegedly

caused those damages"). As to his claim for financial damages, "because Plaintiff[ has] failed to present any evidence that [he] submitted a complete request for mortgage assistance [on time], it cannot be said that Plaintiff['s] loss of [his] home resulted from Defendant's failure to respond to [his] request for assistance. Rather Plaintiff['s] home was foreclosed upon because [he] failed to make payments to [his] servicer." *Dent*, 2015 WL 9694807, at *4 ; *see also Collins v. Wickersham*, 862 F. Supp. 2d 649, 659 (E.D. Mich. 2012) ("The alleged injuries plainly resulted from Plaintiffs' failure to make loan payments and the ensuing foreclosure. Plaintiffs have not pleaded actual harm resulting from the alleged RESPA violations; their claim is therefore futile."); *Benford v. CitiMortgage, Inc.*, No. 11-12200, 2011 WL 5525942, at *5 (E.D. Mich. Nov. 14, 2011) ("Citi's alleged failure to provide [the plaintiff] with . . . information did not result in foreclosure. Rather, Plaintiff's failure to make the loan payments triggered this course of events.").

Lastly, as part of Plaintiff's RESPA claim, he briefly references a Home Affordable Modification Program ("HAMP") violation, as well as a violation of Fannie Mae Announcement SCV-2011-03, "which requires servicers to be judicious when selecting a modification over a repayment plan as the most appropriate option to resolve a delinquency." (Compl. ¶¶ 34(d), 37.) Michigan courts have not recognized that HAMP imposes on servicers a duty of care owed to borrowers, *Campbell*, 611 F. App'x at 299, and the Court is not aware of, nor has Plaintiff shown, any obligation Seterus owes to Plaintiff as a result of the Fannie Mae Announcement.

## IV.

For the reasons stated above, Defendant's motion for summary judgment will be granted. Judgment will enter consistent with this Opinion.


Dated: March 17, 2016                             /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE